IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

WILLIAM MARTIN,

        Petitioner,     :     Case No. 2:21-cv-5102

  - vs -                        Chief Judge Algenon L. Marbley
                                Magistrate Judge Michael R. Merz

WARDEN, Belmont Correctional
  Institution,

                             :
        Respondent.

## SECOND SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner William Martin under 28 U.S.C. § 2254 to obtain relief from his conviction in the Columbiana County Court of Common Pleas, is before the Court on Petitioner's Objections (ECF No. 38) to the Magistrate Judge's Supplemental Report and Recommendations (the "Supplemental Report", ECF No. 34) which recommends dismissal with prejudice.  Chief Judge Marbley has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (ECF No. 39).  Rather than attempt to recapitulate all of the analysis from the Original and Supplemental Reports, this Report will address Petitioner's Second Objections point-by-point.

Martin is serving a thirty-one year sentence upon conviction for weapons and drug offenses, including a major drug offender specification.

1

**Attacks on the Magistrate Judge's Professionalism**

At many points in both sets of Objections, Petitioner attacks the Magistrate Judge's professionalism. This Report will not respond to those attacks because that would be uselessly defensive and not advance decision of the case on the merits. If the Chief Judge desires a response, he need only ask. None of the professionalism objections, even if true, would require recusal under 28 U.S.C. § 144 or 455(a).

**Objection One:** Petitioner objects to the Magistrate Judge's characterization of part of Ground Eleven as a Fourth Amendment violation. Instead, he says, it is entirely a prosecutorial misconduct claim (ECF No. 38, PageID 1129).

The Magistrate Judge agrees that Ground Eleven is a prosecutorial misconduct claim which asserts the prosecutor prevented Martin from having a full and fair opportunity to litigate his Fourth Amendment claims. If accepted, it could demonstrate that Martin did not receive the full and fair opportunity to litigate his motions to suppress as they related to the testimony which the discouraged witness would have given[1]. Per *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982), such a "full and fair opportunity" is necessary to invoke the bar of *Stone v. Powell*, 428 U.S. 465 (1976), on which the Report rely to deny merits review to Petitioner's Fourth Amendment claims.

Respondent argued Ground Eleven was procedurally defaulted because it had never been fairly presented to the Ohio courts (Return, ECF No. 12, PageID 858). The particular ground of default was argued to be *res judicata*: because the asserted error was of record, it was required to be presented on direct appeal and was not.

---

[1] There is, however, no proof of record of what that testimony would have been.

In his Traverse Martin identifies the witness as Mackenzie Strub, one of the two females who were present at his property when it was searched (ECF No. 27, PageID 1024-25). The prosecutor allegedly made remarks during the hearing that suggested Ms. Strub would be criminally charged if she testified. Defense counsel, who also represented Ms. Strub, advised the court that she would not be testifying because he had advised her of her privilege not to incriminate herself. *Id.* The Traverse cites pages in the record that corroborate these facts. Because those facts are of record, the claim could have been made on direct appeal, but was not.

Martin claims the prosecutor's threat of prosecuting Ms. Strub violated his Due Process rights by interfering with his right to compulsory process to obtain the presence of favorable witnesses. But a defendant's right to compulsory process does not trump a witness's privilege against self-incrimination. Defense counsel, who also represented Ms. Strub, assessed the strength of the threat of prosecuting her and advised her not to testify, advice she followed. Given the presence of very large quantities of illicit drugs at the searched residence, it is likely a prosecutor could have obtained an indictment of Ms. Strub, so he was not making an idle threat. Under the circumstances it was perfectly proper for the judge to warn her regarding the privilege against self-incrimination which would be waived if she took the stand.

The prosecutor's warning therefore did not constitute prosecutorial misconduct and did not interfere with Petitioner's right to a full and fair hearing. Ground Eleven should be dismissed.

**Objection Two:** Petitioner objects to the Magistrate Judge's reliance on *Riley, supra*.

> The holdings of *Riley* only address one of the exceptions [to *Stone*], one that is irrelevant to these proceedings. Simultaneously the bar of *Stone v. Powell* is not jurisdictional and a court has authority to hear any and all US IV1 amendment claims at their discretion. *Withrow v. Williams*, 507 U. S. 680, 686 (1993), *Kimmelman v.*

3

*Morrison,* 477 U. S. 365, 378 (1986), *Wallace v. Kato,* 549 U.S. 396 (2007).

(Objections, ECF No. 38, PageID 1130).

The Magistrate Judge agrees that *Stone* is not jurisdictional. The Supreme Court's rationale for that decision was that the deterrence value of the exclusionary rule would not be markedly enhanced by the backup threat of habeas corpus. But that does not mean lower court judges are free to ignore the rule in *Stone* at their discretion. There is no holding to that effect in *Withrow* which held, instead, that *Stone* did not extend to statements elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and the Fifth Amendment.

In *Kimmelman* the Supreme Court held *Stone* did not extend to ineffective assistance of trial counsel claims under the Sixth Amendment. *Wallace* was a 42 U.S.C. § 1983 case in which the Supreme Court held that because of *Stone*, commencement of the statute of limitations under § 1983 on a civil action for Fourth Amendment violations was not delayed pending completion of the companion criminal case. Application of *Stone* by this Court is therefore not discretionary.

**Objection Three: The Supplemental Report Inaccurately Describes the Process Martin Received**

Petitioner objects to the description the Supplemental Report gives of the process he received (ECF No. 38, PageID 1131). The Supplemental Report asserts Martin did not appeal to the Supreme Court of Ohio from the appellate court's affirmance on direct appeal. That is incorrect and is withdrawn. Martin did appeal for direct review to the Supreme Court of Ohio (Notice of Appeal, State Court Record, ECF No. 11, Ex. 36) although that court declined to exercise jurisdiction. *Id.* at Ex. 38. Martin did later fail to appeal from denial of his App. R. 26(B) application, thereby defaulting on his claim of ineffective assistance of appellate counsel.

4

Conceding that the trial court did decide several motions to suppress, Martin asserts that court failed to decide the "issues" presented in Grounds One, Two, and Three (Objections, ECF No. 38, PageID 1131.) At this point in his Objections, Martin does not identify what the undecided "issues" are. The trial court denied all of his motions to suppress, thereby denying any claims he raised. The Seventh District affirmed. It is unclear what more Martin believes is required. He cites to PageID 982 of his Traverse, which involves merely an assertion that the Seventh District did not decide the "issue" presented in Ground Two and review must therefore be *de novo*. What is the allegedly undecided issue?

**Objection Four: Petitioner "objects to the Magistrates[2] claim that he has not made a showing of being deprived of a full and fair hearing in the state court on his US IVth Amendment claims."**

Petitioner asserts that he has addressed the issue of being deprived of a full and fair hearing "many times." (ECF No. 38, PageID 1132). He then cites to ten places in the pleadings where he says he has argued this point. *Id.*

To take the first of these as an example, in his Reply at PageID 948, he concedes that the trial court entertained three motions to suppress in the case, held evidentiary hearings on each of them, and permitted briefing before decision. But this is not enough, he claims. He admits the Supreme Court has not defined "full and fair opportunity." He notes that some appellate courts have, in dicta, required a showing of a generalized failure to take Fourth Amendment claims seriously. *Id.* at PageID 951. This view he says is "problematic" and nearly all courts recognize

---

[2] Petitioner uses the title "Magistrate" 131 times in the objections and the correct title "Magistrate Judge" only five times. "Magistrate" was the correct title until 1991 when Congress changed it. If one were shortening the title of a Circuit Judge or a District Judge, it would inevitably be to "Judge," not "District" or "Circuit." Why not for Magistrate Judges? It took vigorous and not inexpensive lobbying to get the change through Congress.

that an isolated but "unconscionable" misapplication of a theoretically full and fair procedure deprives the prisoner of "an opportunity for full and fair litigation." *Id.* However, he does not assert what the state court did that was an "unconscionable misapplication" of Ohio's motion to suppress procedure.

As authority for an "unconscionable application" exception to *Stone*, Martin cites *Gates v. Henderson,* 568 F. 2d 830 (2d Cir. 1977). There the Second Circuit recognized the theoretical possibility of an exception to *Stone*:

> It may further be that even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted. See *Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915); Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441, 456-57 (1963).

*Id.* at 840. The court continued, however, "But that is not this case." *Id.* The circuit court's comment about unconscionable breakdown is therefore dictum and not a holding that an unconscionable breakdown occurred in that case.

In *Terrell v. Sheldon*, 841 Fed. Appx. 811 (6th Cir. 2021), the Sixth Circuit held the state court process was sufficient to provide a full and fair opportunity when the state courts addressed the merits of Terrell's "particularity" of the search warrant claim. *Markham v. Smith*, 10 Fed. Appx. 323 (6th Cir. 2001), does not involve a *Stone* issue. Martin cites other authority that recognizes the possibility that a breakdown of the process can create an exception to *Stone*, including another reference to a Southern District of New York case quoting Bator, *supra*, on finality, arguing *Stone* does not apply if the State fails to provide a "reasoned method of inquiry into relevant questions of fact and law."[3]

---

[3] Professor Bator was not commenting directly on *Stone* because his article was published in 1963 and *Stone* was not decided until 1976.

6

Petitioner then argues the full and fair opportunity test equates with the parameters of state court hearings required to avoid a federal evidentiary hearing under *Townsend v. Sain*, 372 U.S. 293 (1963). Neither the Supreme Court nor the Sixth Circuit has made that leap.

Petitioner reaches the end of this long section of argument in his Traverse without ever once saying what aspect or aspects of the state court process deprived him of a full and fair opportunity to litigate his Fourth Amendment claims, except for discouraging his witness from testifying by reminding her of her Fifth Amendment privilege. Quoting general language from appellate opinions about "unconscionable breakdowns" of the process does not effectively state a claim that there was such a breakdown in this case. Petitioner claims he addressed this issue many times in his Objections to the first Report, but he cites to PageID 1061 which is an envelope addressed to the Clerk.

Petitioner objects that saying he has not identified deficiencies in the process is "absurd" and "is another example of how either the Magistrate failed to even read the Reply/Traverse, and the Objections to the first Report, or else he is purposefully attempting to misconstrue the Record as it stands." (ECF No. 38, PageID 1133). He then gives nine examples of where he claims he has met this burden.

The first example is cited to be at PageID 1073-81 where he claims the Seventh District Court of Appeals did not take cognizance of the "issues" of whether searching officers trespassed on the curtilage of his house, whether the trespass resulted in seizing evidence that was "fruit of the poisonous tree," and whether it should therefore have been excluded. *Id.* at PageID 1071. Those issues do not appear as assignments of error in Petitioner's Appellant Brief (State Court Record, ECF No. 11, Ex. 31, PageID 306). Ohio Courts of Appeal decide assignments of error, not "issues" somehow thought by appellants to be associated with those assignments. Where does

Petitioner claim he presented this issue to the Seventh District for decision?

Petitioner asserts he is entitled to *de novo* review of these "issues" rather than deferential review under AEDPA. Not so. The Seventh District decided on the merits all of the Fourth Amendment claims presented to it. If the three issues now put forward were in fact presented to the trial court and that court denied relief (as it did), the claims were available to present to the Seventh District. The fact that they were omitted means they were procedurally defaulted. One cannot obtain de novo habeas review by deliberate bypass of the intermediate court of appeals. *Fay* v. *Noia*, 372 U.S. 391, 438 (1963), decided the same day as *Townsend*.

As another example, Petitioner claims his "[e]ntire argument in support of being denied full and fair hearing" is at PageID 1094-1095 (ECF No. 38, PageID 1133). At the cited location, however, Petitioner merely repeats generalities about full and fair opportunities. He says nothing to specify what it was about the actual process that constituted an "unconscionable breakdown" of the required process.

**Objection Five:  Failure to Plead a Due Process or Equal Protection Claim**

The Magistrate Judge held that Petitioner had not pled sufficient facts to state a due process or equal protection claim, but had merely added those labels to his Fourth Amendment claims. Petitioner claims he has refuted this conclusion at PageID 1072. (ECF No. 38, PageID 1136). At that place Petitioner stated:

> "The petitioner was not given a "Full and Fair" hearing on this claim". While petitioner could definitely have gone into further detail on the matter it cannot be said that he did not make an attempt to put the state on notice as to his claims until the filing of the Reply/Travers as the Magistrate incorrectly asserts. Petitioner, while arguably offering the bare minimum in his attempt to put the state

8

> on notice as to what his claims entailed, did make the attempt required.

PageID 1072.  This quotation proves the Magistrate Judge's point:  Petitioner has merely relabeled his argument about full and fair opportunity as a due process violation and an equal protection violation.  And that returns us to the prior point:  what **facts** constitute a deprivation of due process or equal protection?

**Objection Six:  The Magistrate Judge erred in refusing to consider the application of Ohio Revised Code § 2935.12**

In Ground Two, Petitioner argues the searching officers did not comply with Ohio Revised Code § 2935.12.  The Reports rejected this claim because only federal constitutional issues are cognizable in habeas.  Petitioner objects that a search must be reasonable to pass Fourth Amendment muster and "Petitioner referenced Ohio R.C. §2935.12 as that particular statute is the courts way of putting officers on notice as to what they must do in order to comply with the U. S. IVth Amendment guarantee that citizens be protected from unreasonable searches and seizures." (Objections, ECF No. 38, PageID 1149).  Not so.  In the first place, Ohio Revised Code § 2935.12 is a statute, enacted by the Ohio legislature and not by the "courts," either Ohio or federal.  Secondly it is the federal courts and ultimately the United States Supreme Court which defines what conduct is "reasonable" for Fourth Amendment purposes.  State legislatures and state courts can create protections for constitutional values like the sanctity of the private home which are stricter than those adopted by the federal courts and can enforce those stricter limits with an exclusionary rule.  But ultimately the effect of a state statute like 2935.12 is a question of state law and federal courts do not sit in habeas corpus to enforce state law.

Over and above interpretation of the statute, Petitioner complains that "whether officers

9

performed an unreasonable search/seizure upon his private residence, neither the state nor the Magistrate has offered an opinion." As the Original Report concluded, consideration of the merits of this Fourth Amendment claim in this Court is barred by *Stone, supra*.

**Objection Seven: The Magistrate Judge's Recommended Disposition of Ground Eight is Contrary to Law**

In his Eighth Ground for Relief, Petitioner asserts the prosecutor engaged in misconduct by withholding evidence that was important to the defense strategy until jury voir dire which he asserts violated his due process, equal protection, and fair trial rights. Petitioner conceded that this claim was procedurally defaulted because it was not raised on direct appeal and he could not excuse the default as caused by ineffective assistance of appellate counsel because he had also procedurally defaulted on that claim by not appealing denial of his 26(B) application to the Ohio Supreme Court. The Original Report recommended dismissal for procedural default (Report, ECF No. 28, PageID 1053). In his current Objections, Petitioner argues at length how failure to disclose *Brady* material prior to trial can deprive a defendant of his right to a fair trial. But he still offers no excusing cause for his default of this claim.

**Conclusion**

Petitioner concludes by reminding the Court that he is serving a thirty-one year sentence

> "[a]rguably a life sentence to a man in is forties. . . Petitioner has been fighting for six years to receive a fair hearing and fair review by a neutral court. Petitioner comes before this court seeking such review but would be denied by the Magistrate, not because his

10

> claims are meritless, but because of a series of technicalities that the petitioner, as a pro-se litigant, was unaware of.
>
> Petitioner now comes before this court and respectfully requests fair review of the Grounds presented in the petition. Petitioner ultimately seeks the justice he is due as an American citizen.

(Objections, ECF No. 38, PageID 1154). Petitioner obviously does not appreciate the irony of his position. He was in the business of selling drugs in quantities that, under Ohio law, can merit a sentence such as he received. By pleading no contest, he admitted the underlying facts of the charged crimes but sought (and seeks) to avoid prison by relying on a "series of technicalities" surrounding the Fourth Amendment – trespass on curtilage, forcible entry, and so forth. The Magistrate Judge fully supports those technicalities, indeed his oath to defend the Constitution requires it. But "technicalities" like procedural default do not become less a part of the law because they make it harder for habeas petitioners to obtain relief. Federal judges are not commissioned to do "justice," but rather "equal justice under law." Law contains technicalities that cut both ways.

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

March 8, 2023.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the

11

proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*  
United States Magistrate Judge