# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

WILLIAM MARTIN,

        Petitioner,      :      Case No. 2:21-cv-5102

  - vs -                        Chief Judge Algenon L. Marbley
                                  Magistrate Judge Michael R. Merz

WARDEN, Belmont Correctional
  Institution,

                                 :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 54) to the Magistrate Judge's Report and Recommendations on Petitioner's Motion to Alter Judgment and Motion for Additional Findings (ECF No. 51). Chief Judge Marbley has recommitted the case for further analysis in light of the Objections (ECF No. 55).

The Magistrate Judge filed a Second Supplemental Report and Recommendations on the merits of this case on March 8, 2023 (ECF No. 40). Petitioner sought and received an extension of time until April 25, 2023, to file objections (ECF No. 43, 44). When no objections had been received by May 9, 2023, Chief Judge Marbley adopted the Second Supplemental Report and dismissed the case, entering a final appealable judgment (ECF No. 45, 46).

Petitioner's Objections (the "Merits Objections"; ECF No. 47) were received two days later. The Magistrate Judge struck the Objections, finding they were untimely, but offered Petitioner the alternative of making his substantive objections part of a motion to alter or amend

the judgment and advised him of the deadline for doing so (ECF No. 48).

Petitioner rejected that suggestion and instead filed a Fed.R.Civ.P. 59(e) motion asserting his Objections were indeed timely filed. The Magistrate Judge filed a Report recommending that claim be rejected. The case is now before the Court on Petitioner's Objections ("Rule 59(e) Objections") to that conclusion.

This Report is divided into two sections. The first analyzes the Rule 59(e) and Rule 52 Objections and recommends they be overruled. Assuming *arguendo* the Court rejects that recommendation, the second section analyzes the Merits Objections.

**Rule 59(e) Objections**

Petitioner claims his Merits Objections were timely filed. They were due to be filed April 25, 2023, but were not received by the Clerk until May 11, 2023, after the Clerk entered judgment on May 9, 2023. They contain a declaration under penalty of perjury that they were "placed in a sealed envelope and submitted to prison authorities by way of the provided mail box" on the due date. April 25, 2023 (ECF No. 47, PageID 1211).

Petitioner essentially asserts that declaration is conclusive proof of the date of deposit and must be accepted by the Court. He bases his position on his reading of *Houston v. Lack,* 487 U.S. 266 (1988), the seminal case for the mailbox rule. In that case the Supreme Court held that a prisoner's notice of appeal is deemed filed when he or she deposits it in the prison mailing system. That rule has been extended to other prisoner filings in subsequent cases and has been codified by the Supreme Court in Habeas Rule 3(d) which provides:

> **(d) Inmate Filing.** A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a

2

> system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Neither the opinion in *Houston* nor the text of Rule 3(d) says that the inmate's declaration is conclusive proof of the date of deposit. The prisoner in *Houston* was confined in an institution which logged the mail and Justice Brennan opined this would create a bright-line test for timeliness. That is, it would create corroboration of the deposit by a third party. Petitioner's place of confinement, the Belmont Correctional Institution, does not have such a system and the Magistrate Judge is not aware of any other Ohio Department of Corrections institution which maintains such a system, so that proof of deposit is not available. Martin submitted no corroboration of any kind of his claimed date of deposit, neither a receipt nor a statement by a witness.

On the other hand, there is evidence which undermines his claimed date of deposit. The envelope in which the Objections were mailed to the Court is postmarked May 9, 2023 (ECF No. 47-1, PageID 1212).

Petitioner asserts the Magistrate Judge refused to accept his declaration of deposit as proof of when the deposit occurred. Not so. To be absolutely clear, the declaration is proper as to form - it is made under penalty of perjury, shows the date of deposit, and avers that postage was prepaid or at least available from Petitioner's prison account. The Magistrate Judge accepts the declaration as proof, but held it was not **conclusive** proof. Rather, because the date of deposit is an adjudicative fact, it is subject to evidence like any other adjudicative fact.

Petitioner had relied on *Ray v. Clements*, 700 F. 3d 993, 1010 (7th Cir. 2012). The 59(e) Report noted that Petitioner's declaration was purely conclusory and contained none of the

3

corroborating detail the Seventh Circuit found persuasive in that case. The R&R asked the Petitioner to which prison official he had submitted the Merits Objections and when and where he had done so, facts included in the declaration in *Ray*. Petitioner answers those questions in completely conclusory fashion. He did not hand the Objections to a prison official, but placed them in the prison mailbox provided for the same. Fine, but does he have any witnesses to that fact? Asked when he deposited the envelope, he again answers in conclusory fashion: on April 25, 2023, the due date. What time of day? Morning or afternoon? If these questions seem petty, they are asked because the devil is in the details. They are the closest the Court can get to cross-examining Petitioner. As Petitioner knows full well, these are the kind of questions which would be put in cross-examination. But Petitioner's answer is that we cannot ask for detail, we must accept as conclusive his own word for the date of deposit.

Petitioner cites *Glenn v. Warden, Ross Corr. Inst.*, 2013 U.S. Dist. LEXIS 115012 (S.D. Ohio Aug. 14, 2013), for the proposition that a certificate of service is sufficient to shift the burden of proof. The issue in that case was whether the petition had been filed within the statute of limitations and Magistrate Judge Litkovitz held proof of mailing by certificate of service, rather than the more formal declaration under penalty of perjury, was sufficient. She cited *Wampler v. Mills*, 60 Fed. Appx. 594 (6th Cir. 2003), which indeed held a certificate of service was sufficient.

Neither *Glenn* nor *Wampler* says anything about shifting the burden of proof or finding a prisoner's declaration is conclusive. In his 59(e) Objections, Petitioner cites Judge Black's adoption of Judge Litkovitz's in *Glenn*, but fails to note there was no objection by the Warden. Petitioner cites a number of other federal cases, including from the Supreme Court, which have repeated the holding of *Houston* that a prisoner files a paper in court by depositing it with prison officials for mailing. None of them hold a prisoner's declaration of mailing is conclusive in the face of contrary evidence such as exists here.

4

Petitioner asserts the Magistrate Judge reads *Houston* as only applying where there is a prison mail logging system. Not so. The undersigned reads *Houston* and its progeny as holding proof of deposit with prison officials, if made under penalty of perjury, is sufficient evidence, standing alone, to prove when deposit for mailing occurred, but not conclusive proof of that fact. Petitioner has still tendered no corroborating facts.

Petitioner notes the comment from several cases that prison officials may have a motive to delay. While that may be true, particularly when prison personnel are defendants in civil rights cases, Petitioner offers no reason supporting such a motive here. Nor does he point to any other of his mailings that have been delayed for two weeks from the asserted date of deposit. Nor does he deny his own powerful motive to falsify the date of deposit.

Petitioner notes the Magistrate Judge's comment that at common law a defendant was not allowed to testify at all, calling the comment "audacious." The law on a defendant's testimony has, of course, changed, but the reason for the common law rule has not. The law assumed that the temptation to lie would be so great that a testifying defendant would risk punishment in the next life by committing perjury rather than hanging in this life by admitting a crime. The motive for lying under those circumstances has not changed and no rule prohibits a judge or jury from doubting a defendant's credibility, especially when the penalty for perjury is not eternal damnation but the very unlikely prospect of prosecution.

In sum, *Houston* holds the date of deposit is the date of filing, but does not hold a prisoner's declaration of that date is conclusive. Here there is other evidence – a postmark two weeks after the due date. This Court routinely accepts declarations of deposit under *Houston* without questions, as it has done numerous times in this very case. But no precedent compels us to accept as conclusive proof of a fact – the date of deposit – merely a convicted felon has declared it in an uncross-examined hearsay document.

**Rule 52 Objections**

Along with his Rule 59(e) Motion, Petitioner moved for additional findings under Fed.R.Civ.P. 52 (ECF No. 50). The Rule 59(e) Report recommending denying this Motion and Petitioner has objected to that recommendation as well. Although he agrees that the law does not require any particular level of specificity in an order adopting a report and recommendations, he asserts "the Second Supplemental Report and Recommendations, (ECF No. 40), was inconclusive itself and therefore the adoption order would similarly be inconclusive" (Objections, ECF No. 54, PageID 1266).

The gravamen of the Motion for Additional Findings seems to be that the Second Supplemental Report and Recommendations on the merits was structured around responding to Petitioner's Objections to the first Supplemental Report and not directly dispositive of particular grounds for relief. However, the Reports are cumulative. In adopting the Second Supplemental Report and dismissing the case, Chief Judge Marbley accepted the conclusions that led to that point. No further findings are necessary.

**The Merits Objections**

Chief Judge Marbley has the option of rejecting the Magistrate Judge's conclusions on the timeliness of the Merits Objections and proceedings to consider those Objections. To obviate the need for a further recommittal, this Report considers those Objections as if they had been timely filed.

6

**Attack on the Magistrate Judge's Professionalism**

Under the heading "Attack on the Magistrate Judge's Professionalism," Petitioner repeats his accusation that the Magistrate Judge has an "inherit [sic] bias." The undersigned leave to the Chief Judge an evaluation of whether that bias exists and if it has undermined the conclusions in the Reports. Since the undersigned began his federal service in 1984, the law in general has become much less favorable to habeas corpus petitioners. See Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(statute of limitations, bar on second petitions, limitation on evidentiary hearings, required deference to state court decisions); *Cullen v. Pinholster,* 563 U.S. 170 (2011); *Shinn v. Martinez-Ramirez*, 142 S.Ct. 2037 (2022)(further limitations on evidentiary hearings). Retreat from the generosity of the Warren Court had begun well before 1984. See *Stone v. Powell*, 428 U.S. 465 (1976)(limit on Fourth Amendment claims); *Wainwright v. Sykes*, 433 U.S. 72 (1977)(procedural default). Trial court judges are not free agents, but must obey Supreme Court precedent. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982)[1].

**Objection One**

In his first objection, Petitioner criticizes the Magistrate Judge's handling of Ground for

---

[1] Admittedly, the undersigned's reading of *Houston* is not as favorable to prisoner litigants as Petitioner's reading. But as shown above no federal court has adopted a reading of *Houston* as liberal as Petitioner's.

Relief Eleven (ECF No. 47, PageID 1189-96).  Ground Eleven reads:

> **Ground Eleven:** Due to prosecutorial misconduct, Petitioner was denied a fair hearing and thus violating his 5th and 14th amendment right to due process and equal protection of the laws, as well as his right to compulsory process to obtain witnesses in his favor in violation of his 6th amendment right to the U.S. Constitution.

McKenzie Strub was present when the police executed the search warrant on Martin's residence which was also her residence.  She was present in the courthouse at the time of the first suppression hearing on July 12, 2017, without subpoena at Martin's request.  Peter Horvath, who was Martin's attorney at the time, was going to call Ms. Strub to identify some photographs of the residence.  At the point in the hearing when it would have been time to do so, he had heard testimony from Officer Grabman that Ms. Strub had made statements that might have implicated her in permitting drug abuse on the premises (Transcript, ECF No. 11-1, PageID 590-92).  Horvath had Grabman identify the photographs, then conferred confidentially with Ms. Strub.  On the record, he advised the court that he had advised her not to testify and she had accepted that advice.  *Id.*

There is no record of supposed threats by the prosecutor to persuade Ms. Strub not to testify.  The only comment by Mr. Weikart was that the court should advise her of her privilege against self-incrimination.  Thus the factual premise of Martin's prosecutorial misconduct claim – that the prosecutor threatened Ms. Strub – is unproven.

Martin also admits that his prosecutorial misconduct claim is procedurally defaulted because it was never presented to the Ohio trial court or on direct appeal.  He suggests that these defaults are excused by ineffective assistance of trial counsel and ineffective assistance of appellate counsel, but without a factual predicate there would have been no objection or assignment of error to be made.

Martin also argues that if the prosecutorial misconduct claim cannot stand alone, the underlying facts should be considered with respect to his claim that he did not get a full and fair hearing of his Fourth Amendment claims, thereby avoiding the *Stone v. Powell* bar.  In his Objections, Martin asserts that the prosecutor did make threats and that he gave transcript references for those threats in his Traverse (ECF No. 47, PageID 1193).  However, he does not cite where this was done in the 115-page Traverse, despite the clear order that record references are to be to the PageID (See Order for Answer, ECF No. 3, PageID 66:  "All papers filed in the case thereafter by either party shall include record references to the PageID number.").  What the Traverse actually says on this point is:

> Throughout the course of the hearing the State made several disparaging comments that gave defense counsel reason to believe that, if Ms. Strub were to testify on behalf of the petitioner, then she would be charged with crimes associated with petitioners' criminal conduct. When it came time for defense counsel to call his witnesses, counsel stated that due to the remarks of the State, he felt the need to inform Ms. Strub that it may not be in her best interest to take the stand.

(ECF No. 27, PageID 979).  That paragraph contains no threats at all.  In the Traverse, Martin references PageID 581 and 586 of the suppression hearing transcript, but there are no threats on either of those pages. Nor did Mr. Horvath attribute his decision not to call Ms. Strub to the "disparaging comments" of Mr. Weikart.  Rather, Horvath had heard Grabman testify to hearing Ms. Strub make comments which were self-incriminating while she was detained pending issuance of the search warrant.

These facts do not show Martin did not get a full and fair hearing on his motions to suppress.  First of all, he has not shown what facts Ms. Strub would have testified to.  He asserts he could not have known, but she was present to be a witness at his request and a proffer of her

testimony could surely have been made[2]. Petitioner objects to the Magistrates Judge's insinuation that the substance of the witnesses' testimony would have been relevant to a determination of whether or not petitioner was deprived of his right to compulsory process to obtain and present witnesses in his favor. However, Ms. Strub was not subpoenaed and even if the prosecutor had interfered with a subpoena, the compulsory process violation would still be subject to harmless error analysis.

Second, *Stone v. Powell* and its progeny do not suggest that a hearing is not full and fair because a witness invokes her privilege against self-incrimination.

**Objection Two**

In his second Objection, Petitioner seeks an admission by the Magistrate Judge that there are exceptions to the *Stone v. Powell* bar that are not discussed in *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). Petitioner complains that despite "several opportunities," the undersigned has not disputed Petitioner's claim. In response the Magistrate Judge would note that the Second Supplemental Report and Recommendations discusses all of the precedent on which Petitioner relies for that proposition and concluded that none of those cases provided an exception applicable to this case. In other words, whatever may be the case in the abstract, Petitioner has not shown any exception to *Stone* which applied here.

---

[2] The only suggested testimony was identification of the photographic exhibits and Horvath was able to obtain that from Grabman.

**Objection Three**

Petitioner claims that what is now Ground Two of his Petition was presented to the trial court and not decided by it. Ground Two reads:

> **Ground Two**: The Court denied the Petitioner due process and equal protection of the law under the U.S. Constitution 5th and 14th amendments when the court did not apply the exclusionary rule to evidence obtained after officers unlawfully forced entry into the Petitioner's home. Thus, violating Petitioner's 4th amendment right under the U.S. Constitution, to be free from unreasonable searches and seizures.

The Magistrate Judge noted the trial court had denied all of Martin's motions to suppress. Martin notes, correctly, that the Entry following the last motion to suppress hearing refers only to Branch 8 of the Motion to Suppress (State Court Record, ECF No. 11, Ex. 22). Petitioner did not raise this claim as an assignment of error on appeal and it is therefore procedurally defaulted. He did raise it as an omitted assignment of error in his 26(B) application, but that application was denied because it was very untimely (Opinion, State Court Record, ECF No. 11, Ex. 40).

**Objection Four**

In his Fourth Objection, Petitioner accuses the Magistrate Judge of essentially saying all hearings are full and fair. Not so. This Petitioner received a number of evidentiary hearings over the course of more than a year and then plenary consideration of the Fourth Amendment claims he raised on appeal. While there can be hearings that are not full and fair, that is not what happened here.

**Objection Five**

This Objection does not require further analysis.

**Objection Six**

This Objection does not require further analysis.

**Objection Seven**

This Objection does not require further analysis.

**Conclusion**

*Houston v. Lack* does not require this Court to accept a prisoner's declaration of date of deposit as conclusive proof of that date. In this case there is no corroborating evidence and substantial contrary evidence – a postmark two weeks after the claimed date of deposit. The Court should therefore overrule Petitioner's Objections to the striking of his Merits Objections (ECF No. 47). If the Court disagrees and considers those Objections on their merits, they also should be overruled and the Court's dismissal allowed to stand.

Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability as to both the merits and his Rule 59(e) Motion and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous

and should not be permitted to proceed *in forma pauperis*.

August 30, 2023.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge
